Mike Arias, Esq. (SBN 115385)
mike@aswtlawyers.com
Alex Ballard, Esq. (SBN 350789)
alex@aswtlawyers.com
**ARIAS SANGUINETTI WANG & TEAM, LLP**
6701 W. Center Drive, 14th Fl.
Los Angeles, CA 90045
Tel: (310) 844-9696;
Fax: (310) 861-0168

Denisse O. Gastélum, Esq. (SBN 282771)
dgastelum@gastelumfirm.com
**GASTÉLUM LAW**
**A PROFESSIONAL CORPORATION**
3767 Worsham Ave.
Long Beach, California 90808
Tel: (213) 340-6112;
Fax: (213) 402-8622

Attorneys for Plaintiff,
ELI MATTHEWS

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELI MATTHEWS, an individual, | CASE NO.: 2:24-cv-1483 |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | 1. Excessive Force in Violation of the Fourth Amendment (42 USC § 1983) |
| COUNTY OF LOS ANGELES, a public entity; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, a public entity, JAIME ROMERO, individually; ALBERT MACIAS, individually; DAVID VEGA, individually; HILDA RUIZ, individually; ABEL SANDOVAL, individually; DANIEL CONTRERAS, individually; and DOES 1-10, inclusive, | 2. Failure to Intervene in Violation of the Fourth and Fourteenth Amendments (42 U.S.C. § 1983) |
| | 3. Municipal Liability – Unconstitutional Policy, Practice or Custom (*Monell*, 42 USC § 1983) |
| | 4. Municipal Liability – Failure to Train, Supervise, Discipline or Correct (*Monell*, 42 USC § 1983) |
| Defendants. | 5. Negligence |
| | 6. Battery by Peace Officer |
| | 7. Violation of California Civil Code § 52.1 (Tom Bane Act) |
| | **DEMAND FOR JURY TRIAL** |

1

## **INTRODUCTION**

1.     This is a civil rights action seeking monetary damages against Defendants COUNTY OF LOS ANGELES (hereafter "COUNTY") and LOS ANGELES COUNTY SHERIFF'S DEPARTMENT (hereinafter "LASD") (hereinafter collectively "COUNTY DEFENDANTS"), and Defendants JAIME ROMERO (hereinafter sometimes referred to as "ROMERO"), ALBERT MACIAS (hereinafter sometimes referred to as "MACIAS"), DAVID VEGA (hereinafter sometimes referred to as "VEGA"), HILDA RUIZ (hereinafter sometimes referred to as "RUIZ"), ABEL SANDOVAL (hereinafter sometimes referred to as "SANDOVAL"), DANIEL CONTRERAS (hereinafter sometimes referred to as "CONTRERAS") (hereinafter collectively "DEPUTY DEFENDANTS"), and Defendants DOES 1-10, inclusive, stemming from an excessive force incident involving Defendants and Plaintiff ELI MATTHEWS (hereafter referred to as "MATTHEWS").

2.     On January 17, 2023, Defendant ROMERO pummeled MATTHEWS'



head over and over again by pounding his fists repeatedly against the left side of MATTHEWS' face.   Defendant ROMERO brutally assaulted MATTHEWS despite MATTHEWS being unarmed at the time, and MATTHEWS was not presenting an imminent threat of death or serious bodily injury to Defendant ROMERO.

3.     Defendant   ROMERO   caused MATTHEWS   significant   injuries   including   a fractured orbital socket, a traumatic brain injury, among   other   ongoing   injuries.   Fortunately, MATTHEWS survived Defendant ROMERO's use of excessive force.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

4.   As Defendant ROMERO viciously assaulted MATTHEWS, Defendants MACIAS, VEGA, RUIZ, SANDOVAL, and CONTRERAS failed to take any appropriate action to intervene and prevent serious bodily injury to MATTHEWS.

5.   In using such unreasonable and excessive force, without intervention, Defendants ROMERO, MACIAS, VEGA, RUIZ, SANDOVAL, and CONTRERAS, and each of them, violated Plaintiff MATTHEWS's constitutional rights including his Fourth Amendment rights under the United States Constitution. Further, the use of excessive force by Defendant ROMERO was due to Defendant LOS ANGELES COUNTY SHERIFF'S DEPARTMENT's and COUNTY OF LOS ANGELES' failure to train their employees.

6.   Accordingly, this Complaint seeks judicial redress and monetary damages for such constitutional violations.

## JURISDICTION AND VENUE

7.   This case is properly heard in United States District Court under federal question jurisdiction, pursuant 28 U.S.C. § 1331, as it is a civil suit which presents questions arising exclusively under federal law.

8.   Venue is proper in the Central District of California, pursuant to 28 U.S.C. § 1391(b)(2), as all incidents, events, and occurrences giving rise to this action occurred in the City of Los Angeles, County of Los Angeles, State of California.

## PARTIES

9.   Plaintiff ELI MATTHEWS is and was, at all relevant times, a resident of the City of Los Angeles, in the County of Los Angeles, State of California.

10.   Defendant COUNTY OF LOS ANGELES (hereinafter sometimes referred to as "COUNTY) is a municipality with the capacity to sue and be sued.

11.   Defendant LOS ANGELES COUNTY SHERIFF'S DEPARTMENT (hereinafter sometimes referred to as "LASD"), is a public entity pursuant to Government Code Section 811.2 with the capacity to sue and be sued. *See Streit v. Cnty. of Los Angeles*, 236 F.3d 552 (9th Cir. 2001).

12. At all relevant times, Defendants JAIME ROMERO, ALBERT MACIAS, DAVID VEGA, HILDA RUIZ, ABEL SANDOVAL, DANIEL CONTRERAS, and DOES 1-10, inclusive, were individuals employed as deputies with the Defendant LOS ANGELES COUNTY SHERIFF'S DEPARTMENT acting within the course and scope of that employment, under color of law.

13. Plaintiff MATTHEWS does not yet know of the exact names or titles of the individual defendants sued fictitiously as DOES 1-10, inclusive. However, Plaintiff MATTHEWS will seek leave to amend this Complaint to allege such names and titles as that information is ascertained.

14. Each of the defendants named herein has caused and is responsible for the unlawful conduct and resulting rights violations suffered by Plaintiff MATTHEWS, either through personal participation in the conduct; by acting jointly and in concert with those who did; by authorizing, acquiescing, or failing to take action to prevent or intervene in the unlawful conduct; by promulgating policies or procedures pursuant to which the unlawful conduct occurred; by failing and refusing, with deliberate indifference to the rights and wellbeing of Plaintiff and others similarly situated, to initiate and maintain adequate supervision and/or training of the wrongful actors; or by officially ratifying or endorsing the misconduct of the actors under their supervision, direction, and/or control.

15. Whenever and wherever reference is made in a claim for relief to any act or omission by a defendant, such allegation and reference shall also be deemed to mean the acts and omissions of each defendant individually, jointly, and severally. Accordingly, each of the individual defendants is sued in their personal capacities for the harms caused by their acts or omissions, whereas the Defendant LASD and COUNTY are sued vis-a-vis the unconstitutional policies, practices, customs, training failures, and/or official ratifications that were the moving force behind the individual defendants' misconduct.

/ / /

1

### **FACTUAL ALLEGATIONS**

2    16.    On January 17, 2023, at approximately 8:30 AM, MATTHEWS' mother

3 called 9-1-1 because she saw that her car was missing from her apartment complex

4 located at 4125 Whittier Boulevard in Los Angeles, California.

5    17.    Unbeknownst to MATTHEWS' mother, MATTHEWS had used her car

6 that morning and was still using the car when MATTHEWS' mother contacted 9-1-1.

7    18.    Before any law enforcement arrived, however, MATTHEWS returned to

8 his mother's apartment complex with her car.

9    19.    MATTHEWS' mother called 9-1-1 again to inform them that she no

10 longer needed law enforcement to come to her residence because it was her son,

11 MATTHEWS, who had used the car and had returned the car to her.

12    20.    At all relevant times, MATTHEWS was lawfully present at his mother's

13 apartment.

14    21.    At all relevant times, there was no report of a crime, MATTHEWS was

15 not engaging in a crime, nor was MATTHEWS a threat to the safety of the community.

16    22.    However, while MATTHEWS was at his mother's apartment, Deputy

17 Defendants nonetheless arrived on scene and began seeking to confront and arrest

18 MATTHEWS.

19    23.    Facing the threat of law enforcement, MATTHEWS hid in a closet located

20 in a common area of the apartment complex.

21    24.    After MATTHEWS was chased into a closet in the apartment complex

22 common area, DEPUTY DEFENDANTS began a stand-off with MATTHEWS.

23    25.    MATTHEWS, who was unarmed during his entire interaction with law

24 enforcement, began asking the DEPUTY DEFENDANTS why they were trying to

25 arrest him and what they were trying to arrest him for.

26    26.    After some time, the DEPUTY DEFENDANTS aggressively opened the

27 door to the closet and began using various measures of force on MATTHEWS, who

28 remained inside the closet.

27.     At this time, Deputy MACIAS fired two (2) 40mm baton less-lethal weapon rounds at MATTHEWS while MATTHEWS remained inside the closet.

28.     With MATTHEWS still inside the closet, Deputy SANDOVAL applied a drive-stun to MATTHEWS' left forearm with an X-26P TASER.

29.     Shortly after this, Deputy SANDOVAL again used his X-26P TASER, this time on MATTHEW's torso.

30.     Deputy ROMERO deployed his X-26P TASER and, at this point, MATTHEWS complied with law enforcement commands by exiting the closet.

31.     Deputy VEGA and Deputy SANDOVAL put MATTHEWS up against the wall in order to handcuff MATTHEWS behind his back.

32.     During the course of being handcuffed, MATTHEWS tucked both his arms in front of his chest and attempted to move away from the wall. The DEPUTY DEFENDANTS performed a "team takedown" of MATTHEWS and pinned him on the ground.

33.     Deputy SANDOVAL again fired his X26-P TASER, striking MATTHEWS' body.

34.     With MATTHEWS on the ground under the body weight of Deputy VEGA, Deputy SANDOVAL, and Deputy CONTRERAS, Deputy ROMERO then utilized a control hold by grabbing MATTHEWS hair and striking MATTHEWS once with his fist.

35.     At this point, Deputy ROMERO reported that MATTHEWS was subdued and laying on the floor under the weight of multiple deputies.

36.     Despite MATTHEWS remaining on the ground in the process of being handcuffed by multiple deputies and posing no threat to law enforcement, Deputy ROMERO struck MATTHEWS two (2) additional times in the left side of his face.

37.     At this point, MATTHEWS was successfully handcuffed by Deputy Defendants.

38.     MATTHEWS complained of severe pain to his left eye. Immediately, MATTHEWS' left eye began to swell and bruise.

39.     The use of force used by Defendant ROMERO against MATTHEWS, and more specifically the continued pummeling of Defendant ROMERO's fists against MATTHEW's face causing a fractured orbital socket and traumatic brain injury, among other ongoing injuries, was so unreasonable, unnecessary, and excessive as to shock the conscience. By this chosen course of action, Defendants have conducted themselves with: 1) spiteful, ill-willed, and/or harmful purpose; 2) unnecessary harshness and severity amounting to an abuse of authority over another's weakness, disability, or misfortune; and/or 3) complete indifference to Plaintiff's and others' rights and safety in the face of manifest risks thereto.

40.     Accordingly, MATTHEWS is entitled to recover compensatory damages for the severe mental, physical, and emotional pain and suffering to which they subjected him, any physical disability and hindered earning potential they have caused him, and all past and future medical expenses, among other things, in order to deter such despicable conduct by the example of their punishment. In addition to punitive damages against Defendant ROMERO.

41.     Finally, the various unconstitutional policies, customs, and/or practices in place at the LASD, primarily regarding the use of excessive force against members of the public; as well as pervasive failures to adequately train LASD personnel in mental health crisis recognition and interventions; and the routine permission or encouragement of officer misconduct by LASD and COUNTY policymakers, were substantial moving forces behind Defendants' attack of MATTHEWS. Further, each of the described realities of the LASD's unconstitutional operation have directly caused or otherwise provided for rampant uses of unreasonable, excessive, and deadly force against African Americans and other minority suspects like ELI MATTHEWS and their communities.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

42.     Accordingly, the Defendants COUNTY OF LOS ANGELES and the LOS ANGELES COUNTY SHERIFF'S DEPARTMENT can and must be held directly liable for the substantial role it played in causing the events of January 17, 2023, and so many other days like it.

## FIRST CLAIM FOR RELIEF

### FOR EXCESSIVE FORCE

### IN VIOLATION OF THE FOURTH AMENDMENT

### (42 USC § 1983)

### (By Plaintiff against Defendant JAIME ROMERO)

43.     Plaintiff realleges and incorporates by reference each of the forgoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

44.     Defendant JAIME ROMERO used excessive force against MATTHEWS by unnecessarily and unreasonably striking him three (3) times in the face, while acting under color of law, and in clear and well-established violation of the Fourth Amendment to the United States Constitution.

45.     Under the same or similar circumstances, no reasonable officer would have used force of the manner and to the extent as that used by Defendant ROMERO against MATTHEWS. MATTHEWS was not an imminent threat of death or serious bodily injury to any officers or anyone else. MATTHEWS was already subdued and on the ground under the weight of several deputies when Defendant ROMERO used excessive force on him.

46.     It is clearly excessive to strike someone in the face/eye three (3) times, especially when they are unarmed and pinned down on the ground. Defendant ROMERO's use of excessive force on MATTHEWS was clearly unreasonable.

47.     As a direct and foreseeable result of being struck in the face three (3) times by Defendant ROMERO, as well as being left to suffer for several minutes thereafter by each and every one of the individual defendants, Plaintiff has suffered and will

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

1  continue to suffer, among other things, severe mental, physical, and emotional distress,

2  lost earning potential, and exorbitant medical expenses.

3      48.    The use of force and tactics used by Defendant ROMERO, and DOES 1-

4  10, inclusive, in MATTHEWS' mother's apartment complex, while MATTHEWS

5  suffered through an ongoing mental health crisis, was so unreasonable, unnecessary,

6  and excessive as to shock the conscience. By this chosen course of action, Defendants

7  have conducted themselves with: 1) spiteful, ill-willed, and/or harmful purpose; 2)

8  unnecessary harshness and severity amounting to an abuse of authority over another's

9  weakness, disability, or misfortune; and/or 3) complete indifference to Plaintiff's and

10  others' rights and safety in the face of manifest risks thereto.

11      49.    Accordingly, MATTHEWS is entitled to recover punitive damages

12  against the individual Defendant ROMERO, and DOES 1-10, inclusive, in addition to

13  compensation for the severe mental, physical, and emotional pain and suffering to

14  which they subjected him, any physical disability and hindered earning potential they

15  have caused him, and all past and future medical expenses, among other things, in order

16  to deter such despicable conduct by the example of their punishment.

**SECOND CLAIM FOR RELIEF**

**Failure to Intervene**

**Fourth & Fourteenth Amendments (42 U.S.C. § 1983)**

**(By Plaintiff against Defendants JAIME ROMERO, ALBERT MACIAS,**

**DAVID VEGA, HILDA RUIZ, ABEL SANDOVAL, and DANIEL**

**CONTRERAS)**

23      50.    Plaintiff realleges and incorporates herein by reference each of the

24  preceding paragraphs of this complaint, and any subsequent paragraphs.

25      51.    All of the acts of Defendants JAIME ROMERO, ALBERT MACIAS,

26  DAVID VEGA, HILDA RUIZ, ABEL SANDOVAL, and DANIEL CONTRERAS

27  and the persons involved were done under color of state law.

28

9

52.    The acts of the DEPUTY DEFENDANTS deprived MATTHEWS of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to his rights under the Fourth Amendment of the United States Constitution, incorporated and made applicable to the states by the Fourteenth Amendment, by, among other things, failing to intervene in the unlawful actions of other deputies, including the repeated and brutal assault of MATTHEWS. Plaintiff's injuries resulting from the brutal assault were known consequences from this type of abusive police behavior.

53.    Each of the DEPUTY DEFENDANTS was both personally involved and an integral participant in the violation of MATTHEWS' constitutional rights because each officer was aware of the unlawful actions of the other deputies, did not object to these violations of MATTHEWS' rights, and participated in the violations by performing law enforcement functions, including meaningful participation in the needless and unnecessary operation to escalate the encounter with MATTHEWS and use excessive force.

54.    As a direct and proximate result of the DEPUTY DEFENDANTS' unlawful conduct, plaintiff suffered severe physical injury, emotional distress, humiliation and is entitled to monetary damages.

55.    The conduct of the DEPUTY DEFENDANTS and DOES 1-10 was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights of the Plaintiff and therefore warrants the imposition of exemplary and punitive damages against each individual Defendant (but not the entity Defendant) in an amount adequate to punish the wrongdoers and deter future misconduct.

/ / /

/ / /

/ / /

/ / /

1

**THIRD CLAIM FOR RELIEF**

2

**MUNICIPAL LIABILITY –**

3

**UNCONSTITUTIONAL POLICY, CUSTOM, OR PRACTICE**

4

(***Monell***, 42 U.S.C. § 1983)

5

**(By Plaintiff against Defendants COUNTY OF LOS ANGELES and LOS**

6

**ANGELES COUNTY SHERIFF'S DEPARTMENT)**

7
8

     56.    Plaintiff realleges and incorporates by reference each of the forgoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

9
10
11
12
13
14

     57.    The present cause of action is brought pursuant to 42 U.S.C. § 1983; *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978); *Canton v. Harris*, 489 U.S. 378 (1989); and all other relevant federal authority under which Defendants LASD and COUNTY are liable for the unconstitutional acts and omissions of its employees, agents, and/or representatives, vis-a-vis the policies, customs, and/or practices that were the moving force behind such misconduct.

15
16
17
18
19
20

     58.    As set forth in the foregoing claim for relief, Defendants JAIME ROMERO, ALBERT MACIAS, DAVID VEGA, HILDA RUIZ, ABEL SANDOVAL, and DANIEL CONTRERAS, and DOES 1-10, inclusive, committed clear and well-established violations of MATTHEWS's constitutional rights, under color of law, and while acting within the course and scope of their employment as police officers with Defendant LASD and COUNTY.

21
22
23
24
25
26
27

     59.    The complete and utter failure of the Defendants LASD and COUNTY to redress systemic unconstitutional customs and practices and implement procedural safeguards, in all of the ways described in the paragraph to follow, is tantamount to an unconstitutional policy of inaction on account of the facts that: 1) certain unlawful customs or practices have been permitted to grow so widespread commonplace in their usage as to constitute standard operating procedures within the LASD; and 2) the need for more or different training is so obvious, and the inadequacy so likely to result in the

28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1    violation of constitutional rights set forth herein that the policymakers of the LASD

2    and COUNTY can be reasonably regarded as deliberately indifferent to this need.

3         60.    On and for some time prior to January 17, 2023 (and continuing to the

4    present date), Defendants LASD, COUNTY and DOES 6-10, acting with gross

5    negligence and with reckless and deliberate indifference to the rights and liberties of

6    the public in general, and of Plaintiff, and of persons in his class, situation, and

7    comparable position in particular, knowingly maintained, enforced, and applied an

8    official recognized custom, policy, and practice of:

9         A. Permitting LASD personnel, such as Defendant ROMERO, to continuously

10            pummel members of the public in the face over and over again resulting in

11            bone fractures, such as the assault and ensuing injury suffered by

12            MATTHEWS;

13        B. Permitting LASD personnel, such as Defendant ROMERO, to brutally

14            assault members of the public such as MATTHEWS despite being unarmed;

15        C. Permitting LASD personnel to use excessive even after officers have already

16            used force and a perceived threat has been neutralized;

17        D. Failing to correct repeated excesses of force, and to adequately train, instill,

18            and retrain LASD personnel on the appropriate standards therefor, de-

19            escalation techniques, familiarity with "less-than-lethal" alternatives to

20            excessive force and confidence in their reliance thereon.

21        E. Employing and retaining LASD personnel, including the individual

22            defendants, who are known or reasonably could have been discovered to have

23            high propensities for abusing their authority, omitting crucial duties,

24            mistreating civilians, resorting to excessive force, and failing to follow

25            established agency policies respecting interactions with civilians and their

26            civil rights;

27        F. Maintaining vastly inadequate procedures and follow through, if any, for the

28            reporting, investigating, supervising, disciplining, and correcting of

intentional misconduct and/or gross negligence by LASD personnel, including the individual defendants;

G. Consistently ratifying the intentional misconduct and/or gross negligence of LASD personnel, either through direct endorsements or sustained acquiescence, and thereby fostering a culture of impunity conducive to rampant misconduct and/or flagrance;

H. Encouraging, accommodating, or facilitating a "code of silence" among LASD personnel, including the individual defendants, pursuant to which false reports are routinely generated, abuses of power covered up, and whistleblowers discouraged or ousted from law enforcement;

I. Actively facilitating the transfer of problem LASD personnel to other stations, divisions, positions, or to other law enforcement agencies altogether, to essentially "bury," erase, dilute, hide, spread out, etc., these problem actors and their misconduct, thereby allowing them to evade discipline and, likewise, shielding the LASD from accountability;

J. Allowing law enforcement personnel to encourage, intimidate, and compel others to "work in gray," or maintain a "code of silence" or "blue code," regarding unconstitutional abuses in order to collectively insulate each other from accountability, attract and recruit problematic individuals to law enforcement, and improperly or expeditiously promote problem actors into positions of supervision or

authority within the LASD; and

K. The many other abuses of power and/or breaches of duty not specifically identified herein.

61. The structural and administrative features set forth above regardless of whether expressly adopted, informally entrenched as *de facto* customs or practices due to their widespread and longstanding character, or having materialized in

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1  the absence of foreseeably necessary safeguards- all constitute standard operating
2  procedures within Defendant LASD and COUNTY.

3      62.   Clearly, the DEPUTY DEFENDANTS acted pursuant to the foregoing
4  customs and practices, and were the moving force behind MATTHEWS' constitutional
5  violations.

6      63.   As a direct consequence of these realities, the public has endured
7  pervasive misuses of force and/or police killings, lost considerable trust and grown
8  increasingly fearful of local law enforcement, and sustained the exorbitant costs of
9  individualized trauma, family and community destruction, and the perpetual
10 hemorrhaging of public resources in remediation rather than prevention of these
11 problems. In the aggregate, these consequences undermine public safety, wellbeing,
12 liberty, and equity so severely that all COUNTY residents are worse off therefore.

13     64.   The perpetual torrent of civilian complaints, litigation, and scrutiny by
14 local, state, and national media, academia, and government officials, has rendered the
15 dire state of affairs within the LASD unignorable and undeniable. At some point well
16 before the brutalization of Plaintiff MATTHEWS, Defendants LASD and COUNTY,
17 and each of the individual supervisory officials thereof, whether named or unnamed,
18 achieved actual or constructive knowledge of the forgoing policies, customs, and
19 practices. Nevertheless, Defendants LASD and COUNTY, by and through its final
20 policymakers, has persisted in tolerating, condoning, or ratifying the above-referenced
21 policies, customs, and practices with deliberate indifference to their unconstitutionality
22 and foreseeable consequences, not least of which resemble those suffered by Plaintiff,
23 Plaintiffs, and other individuals similarly situated.

24     65.   But for the sustained deliberate indifference of the Defendants LASD and
25 COUNTY, and the final policymakers thereof, to the absence or utter inadequacy of
26 procedural safeguards so obviously necessary to the prevention of these readily
27 foreseeable harms, the shooting and brutalization of Plaintiff would, to a reasonable
28 certainty, not have occurred. Therefore, the above-referenced policies, customs, and

1  practices adopted, maintained, or still tolerated by Defendants LASD and COUNTY,

2  and the final policymakers thereof, are so inextricably connected to the unconstitutional

3  acts and omissions of the individual defendants as to have been the moving force

4  behind them.

5       66.    Accordingly, Defendants LASD and COUNTY should not be held any

6  less liable for the harms alleged in all other Claims for Relief, that it caused Plaintiff

7  and Plaintiffs through its employees, who at all times acted or failed to act pursuant to

8  the LASD's and COUNTY's own policy of inaction, as previously set forth.

9  **FOURTH CLAIM FOR RELIEF**

10  **MUNICIPAL LIABILITY –**

11  **FAILURE TO TRAIN, SUPERVISE, DISCIPLINE OR CORRECT**

12  **(*Monell*, 42 U.S.C. § 1983)**

13  **(By Plaintiff against Defendants COUNTY OF LOS ANGELES and LOS**

14  **ANGELES COUNTY SHERIFF'S DEPARTMENT)**

15       67.    Plaintiff realleges and incorporates by reference each of the forgoing

16  paragraphs of this Complaint with the same force and effect as if fully set forth herein.

17       68.    The present cause of action is brought pursuant to 42 U.S.C. § 1983;

18  *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978); *City of Canton v. Harris*, 489

19  U.S. 378 (1989); and all other relevant federal authority under which Defendants

20  LASD and COUNTY, are liable for the unconstitutional acts and omissions of its

21  employees, agents, and/or representatives thereof, vis-a-vis the training failures that

22  were the moving force behind such misconduct.

23       69.    Plaintiff MATTHEWS claims that he was deprived of his civil rights as a

24  result of the Defendants LASD's and COUNTY's failure to train their employees,

25  including Defendants ROMERO, VEGAS, MACIAS, SANDOVAL, RUIZ,

26  CONTRERAS, ALVAREZ, and DOES 1-10, inclusive.

27       70.    At all relevant times, Defendants ROMERO, VEGAS, MACIAS,

28  SANDOVAL, RUIZ, CONTRERAS, ALVAREZ, and DOES 1-10, inclusive, were

acting in the course of their employment with the Defendants LASD and COUNTY, under color of law. The actions and omissions of Defendants ROMERO, VEGAS, MACIAS, SANDOVAL, RUIZ, CONTRERAS, ALVAREZ, and DOES 1-10, inclusive deprived Plaintiff MATTHEWS of particular rights guaranteed under the laws and Constitutions of the United States and California, as set forth in the relevant, earlier claims for relief.

71.     Defendants LASD's and COUNTY's training of Defendants ROMERO, VEGAS, MACIAS, SANDOVAL, RUIZ, CONTRERAS, ALVAREZ, and DOES 1-10, inclusive, did not adequately instill the necessary discipline, restraint, and respect for civil rights required of enforcement personnel, especially in light of the Defendants LASD's and COUNTY's decision to continue to employ Defendants ROMERO, VEGAS, MACIAS, SANDOVAL, RUIZ, CONTRERAS, ALVAREZ, and DOES 1-10, inclusive, despite their incompetence.

72.     Indeed, on and for some time prior to January 17, 2023 (and continuing to the present date), Defendants LASD, COUNTY and DOES 6-10, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of Plaintiff, and of persons in his class, situation, and comparable position in particular, failed to train their employees in the following regard:

A. Failing to train employees by permitting LASD personnel, such as Defendant ROMERO, to continuously pummel members of the public in the face over and over again resulting in bone fractures, such as the assault and ensuing injury suffered by MATTHEWS;

B. Failing to train employees by permitting LASD personnel, such as Defendant ROMERO, to continuously pummel members of the public in the face over and over again resulting in bone fractures, such as the assault and ensuing injury suffered by MATTHEWS;

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

C. Failing to train employees by permitting LASD personnel to use excessive force even after officers have already used force and a perceived threat has been neutralized;

D. Failing to train employees by failing to correct repeated excesses of force, and to adequately train, instill, and retrain LASD personnel on the appropriate standards therefor, de-escalation techniques, familiarity with "less-than-lethal" alternatives to excessive force and confidence in their reliance thereon.

E. Failing to train employees by employing and retaining LASD personnel, including the individual defendants, who are known or reasonably could have been discovered to have high propensities for abusing their authority, omitting crucial duties, mistreating civilians, resorting to excessive force, and failing to follow established agency policies respecting interactions with civilians and their civil rights;

F. Failing to train employees by maintaining vastly inadequate procedures and follow through, if any, for the reporting, investigating, supervising, disciplining, and correcting of intentional misconduct and/or gross negligence by LASD personnel, including the individual defendants;

G. Failing to train employees by consistently ratifying the intentional misconduct and/or gross negligence of LASD personnel, either through direct endorsements or sustained acquiescence, and thereby fostering a culture of impunity conducive to rampant misconduct and/or flagrance;

H. Failing to train employees by encouraging, accommodating, or facilitating a "code of silence" among LASD personnel, including the individual defendants, pursuant to which false reports are routinely generated, abuses of power covered up, and whistleblowers discouraged or ousted from law enforcement;

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

I.   Failing to train employees by actively facilitating the transfer of problem LASD personnel to other stations, divisions, positions, or to other law enforcement agencies altogether, to essentially "bury," erase, dilute, hide, spread out, etc., these problem actors and their misconduct, thereby allowing them to evade discipline and, likewise, shielding the LASD from accountability;

J.   Failing to train employees by allowing law enforcement personnel to encourage, intimidate, and compel others to "work in gray," or maintain a "code of silence" or "blue code," regarding unconstitutional abuses in order to collectively insulate each other from accountability, attract and recruit problematic individuals to law enforcement, and improperly or expeditiously promote problem actors into positions of supervision or
authority within the LASD; and

K.   Failing to train employees as shown by the many other abuses of power and/or breaches of duty not specifically identified herein.

73.   This failure of Defendants LASD and COUNTY to provide adequate training caused the variously alleged deprivations of Plaintiff MATTHEWS' rights by the individual defendants; that is, the LASD's and COUNTY's failure to train is so closely related to the deprivation of MATTHEWS's rights as to be the moving force that caused his ultimate injuries. Clearly, Defendants LASD and COUNTY were deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

74.   Defendants LASD and COUNTY knew that their failure to adequately train its deputies made it highly predictable that its deputies would engage in conduct that would deprive persons, such as MATTHEWS, of their rights. Defendants LASD and COUNTY knew that its failure to adequately supervise, direct, and/or coordinate deputies' use of excessive force against members of the public made it highly predictable that its deputies would engage in conduct that would deprive persons, such

1  as MATTHEWS, of their rights. Defendants LASD and COUNTY are thus deliberately
2  indifferent to the obvious consequences of their failure to train their deputies
3  adequately.

4      75.

5      76.    Accordingly, the Defendants LASD and COUNTY are liable for the rights
6  violations perpetrated by its employees, agents, representatives, or officers, including
7  Defendants ROMERO, VEGA, MACIAS, SANDOVAL, RUIZ, CONTRERAS,
8  ALVAREZ, and DOES 1-10, inclusive, on account of the unacceptable failures in their
9  training that precipitated the various harms set forth in all other claims for relief herein.

10  **FIFTH CLAIM FOR RELIEF**

11  **Negligence**

12  **(Plaintiff As Against Defendants)**

13      77.    Plaintiff realleges and incorporates herein by reference each of the
14  preceding paragraphs of this complaint, and any subsequent paragraphs.

15      78.    The present cause of action is brought pursuant to Cal. Gov. Code §§
16  815.2 and 820. Under Section 820, as a public employee, Defendants ROMERO,
17  VEGA, RUIZ, MACIAS, CONTRERAS, SANDOVAL, ALVAREZ, and DOES 1-5,
18  are liable for injuries caused by his acts or omissions to the same extent as private
19  persons. Under Section 815.2, the defendant public entity, COUNTY, is vicariously
20  liable for injuries caused by the acts or omissions of its employees, officers, and agents,
21  committed within the course and scope of that employment. This cause of action is not
22  alleging direct liability against Defendant COUNTY, only vicarious liability. *See* Cal.
23  Gov. Code § 815.2(a-b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

24      79.    Plaintiff MATTHEWS claims that Defendants ROMERO and DOES 1-5,
25  inclusive, were negligent when they used excessive force on Plaintiff MATTHEWS.

26      80.    Defendants JAIME ROMERO, ALBERT MACIAS, DAVID VEGA,
27  HILDA RUIZ, ABEL SANDOVAL, and DANIEL CONTRERAS and DOES 1-5,
28  inclusive, and each of them, owed Plaintiff MATTHEWS a duty of care. Such duty a

1    care owed to Plaintiff MATTHEWS required the DEPUTY DEFENDANTS and

2    DOES 1-5, inclusive, and each of them, to refrain from the use of force including

3    excessive force unless objectively necessary to defend human life, to use reasonable

4    tactics and decision-making ahead of each such resort to excessive force, and to

5    intervene in foreseeable breaches thereof by other peace officers whenever possible.

6    *See* Cal. Pen. Code § 835a; *Hayes v. County of San Diego* (2013) 57 Cal.4th 622, 628-

7    29; CACI 440-441.

8         81.    Defendants and DOES 1-5, inclusive, and each of them, breached one or

9    more of these duties by resorting to excessive force unnecessarily, and/or using

10   unreasonable pre-excessive force tactics and decision-making, when Defendants and

11   DOES 1-5, inclusive used excessive force on Plaintiff MATTHEWS by striking

12   Plaintiff MATTHEWS in the face while MATTHEWS was pinned down on the ground

13   and not presenting an imminent threat of death or serious bodily injury.

14        82.    The use excessive force to violently strike Plaintiff MATTHEWS was not

15   an accident or inadvertence. Defendants and DOES 1-5 intentionally meant to strike

16   Plaintiff MATTHEWS as was pinned down on the ground.

17        83.    Furthermore, Defendants and DOES 1-5, inclusive, and each of them, also

18   breached one or more of these duties by resorting to force unnecessarily, and/or using

19   unreasonable pre-force tactics and decision-making, when Defendants and DOES 1-5,

20   inclusive used force on Plaintiff MATTHEWS by using force to violently strike

21   Plaintiff MATTHEWS in the face while MATTHEWS was pinned down on the ground

22   and not presenting a threat warranting the use of such force.

23        84.    As previously set forth, the excessive force/intermediate force used by

24   Defendants and DOES 1-5, inclusive, and each of them, was not necessary to defend

25   human life nor to apprehend a fleeing felon under California law, as Plaintiff

26   MATTHEWS was already pinned down on the ground and not presenting any threat

27   whatsoever. Indeed, the excessive force/intermediate force used by Defendants

28   ROMERO and DOES 1-5 was not "objectively reasonable" under the circumstances.

85.     Moreover, Defendants and DOES 1-5, inclusive, and each of them, did not make reasonable efforts to warn of excessive force or deescalate the situation. Clearly, Defendants and DOES 1-5 also implemented negligent pre-force tactics.

86.     Each such breach of duty of care was a substantial factor in causing harm to Plaintiff MATTHEWS to the extent the unreasonable pre-force tactics, decisions, non-interventions, and ultimate resort to excessive force because the conduct of Defendants and DOES 1-5, inclusive, and each of them caused Plaintiff MATTHEWS physical and psychological injuries. Indeed, due to the injuries caused by Defendants and DOES 1-5, inclusive, and each of them, Plaintiff MATTHEWS suffered severe physical, mental, and emotional anguish.

## SIXTH CLAIM FOR RELIEF

### Battery by Peace Officer

### (Plaintiff As Against Defendants)

87.     Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

88.     The present cause of action is brought pursuant to Cal. Gov. Code §§ 815.2 and 820. Under Section 820, as a public employee, Defendants ROMERO and DOES 1-10, are liable for injuries caused by his acts or omissions to the same extent as private persons. Under Section 815.2, the defendant public entity, COUNTY, is vicariously liable for injuries caused by the acts or omissions of its employees, officers, and agents, committed within the course and scope of that employment. This cause of action is not alleging direct liability against Defendant COUNTY, only vicarious liability. *See* Cal. Gov. Code § 815.2(a-b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

89.     Defendants ROMERO and DOES 1-10, inclusive, and each of them, intentionally made physical contact with Plaintiff MATTHEWS' person by using force to directly strike Plaintiff MATTHEWS in the face.

90.     The use of force to violently strike Plaintiff MATTHEWS was not an accident or inadvertence. Defendants ROMERO and DOES 1-10 intentionally meant to strike Plaintiff MATTHEWS as he was pinned down on the ground.

91.     Each act or omission was a substantial factor in causing harm to Plaintiff MATTHEWS because the conduct of Defendants ROMERO and DOES 1-10, inclusive, and each of them caused Plaintiff MATTHEWS physical and psychological injuries. Indeed, due to the injuries caused by Defendants ROMERO and DOES 1-10, inclusive, and each of them, Plaintiff MATTHEWS suffered severe physical, mental, and emotional anguish.

92.     Further, Defendants ROMERO and DOES 1-10, inclusive, and each of them have demonstrated willful and conscious disregard for Plaintiff MATTHEWS' rights and wellbeing, thereby subjecting Plaintiff MATTHEWS to cruel and unjust hardship. Accordingly, Defendants' conduct was malicious and oppressive under Cal. Civ. Code § 3294, entitling Plaintiff MATTHEWS to recover both punitive and compensatory damages to deter future misconduct by the example of Defendants' punishment.

## SEVENTH CLAIM FOR RELIEF

### Violation of California Civil Code §52.1

### (Tom Bane Act)

### (Plaintiff As Against Defendants)

93.     Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

94.     The present cause of action is brought pursuant to Cal. Civ. Code § 52.1 as well as Cal. Gov. Code §§ 815.2 and 820. Under Section 820, as a public employee, Defendants ROMERO and DOES 1-10, are liable for injuries caused by his acts or omissions to the same extent as private persons. Under Section 815.2, the defendant public entity, COUNTY, is vicariously liable for injuries caused by the acts or omissions of its employees, officers, and agents, committed within the course and

1   scope of that employment. This cause of action is not alleging direct liability against

2   Defendant COUNTY, only vicarious liability. *See* Cal. Gov. Code § 815.2(a-b); *Zelig*

3   *v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

4          95.     Additionally, Cal. Civ. Code § 52.1(b) authorizes a private right of action

5   for damages by any person whose constitutional rights are violated by use of threats,

6   intimidation, or coercion. Importantly, Section 52.1 serves as an analogous state-law

7   basis for bringing excessive/unreasonable force claims as that provided under the

8   Fourth Amendment to the United States Constitution. *See Chaudhry v. City of Los*

9   *Angeles*, 751 F.3d 1096, 1105-6 (9th Cir. 2014) (citing *Cameron v. Craig*, 713 F.3d

10  1012, 1022 (9th Cir.2013) ("[T]he elements of the excessive force claim under § 52.1

11  are the same as under § 1983.")); *Bender v. Cnty. of L.A.*, 217 Cal.App.4th 968, 976

12  (2013) ("an unlawful [seizure]—when accompanied by unnecessary, deliberate, and

13  excessive force—is [] within the protection of the Bane Act.").

14         96.     As previously set forth, Defendants ROMERO and DOES 1-10, inclusive,

15  and each of them, either intentionally used deadly/intermediate force on Plaintiff

16  MATTHEWS thereby interfering with the exercise and enjoyment of his civil rights

17  under the laws and Constitutions of the United States and California, including but not

18  limited to the rights to be free from unreasonable seizure and excessive force (U.S.

19  Const. amend. IV; and Cal. Const. Art. I § 13), the right to due process (U.S. Const.

20  amend. XIV; and Cal. Const. Art. I § 7(a)), and the right to protection from undue

21  restraint and/or harm to life, liberty, and property (Cal. Const. Art. I § 1).

22         97.     Defendants ROMERO and DOES 1-10, inclusive, and each of them, acted

23  with the specific intent to interfere, or attempt to interfere, with Plaintiff MATTHEWS'

24  right to be free from unreasonable seizures through threats, intimidation, and coercion.

25  Indeed, based upon Plaintiff MATTHEWS not being a threat or danger or anyone

26  including Defendants ROMERO and DOES 1-10, inclusive, and each of them, it is

27  clear that Defendants ROMERO and DOES 1-10, inclusive, and each of them, acted

28

1   with the specific intent to interfere, or attempt to interfere, with Plaintiff MATTHEWS'

2   rights.

3   98.   In interfering with Plaintiff MATTHEWS' rights, Defendants ROMERO

4   and DOES 1-10, inclusive used threats, intimidation, and coercion in using an

5   excessive/intermediate force which was excessive reflecting a clear and specific intent

6   to deprive Plaintiff MATTHEWS of the aforementioned rights and liberties, and/or a

7   reckless disregard for substantial risks of violations thereof.

8   99.   The use of force to violently strike Plaintiff MATTHEWS was not an

9   accident or inadvertence. Defendants ROMERO and DOES 1-10 intentionally meant

10   to strike Plaintiff MATTHEWS as he was pinned down on the ground showing that

11   Defendants ROMERO and DOES 1-10 acted with the specific intent to deprive

12   Plaintiff of his rights through threats, intimidation, and coercion.

13   100.   Each act or omission was a substantial factor in causing harm to Plaintiff

14   MATTHEWS because the conduct of Defendants ROMERO and DOES 1-10,

15   inclusive, and each of them caused Plaintiff MATTHEWS physical and psychological

16   injuries. Indeed, due to the injuries caused by Defendants ROMERO and DOES 1-10,

17   inclusive, and each of them, Plaintiff MATTHEWS suffered severe physical, mental,

18   and emotional anguish.

19   101.   Further, Defendants ROMERO and DOES 1-10, inclusive, and each of

20   them have demonstrated willful and conscious disregard for Plaintiff MATTHEWS'

21   rights and wellbeing, thereby subjecting Plaintiff MATTHEWS to cruel and unjust

22   hardship. Accordingly, Defendants' conduct was malicious and oppressive under Cal.

23   Civ. Code § 3294, entitling Plaintiff MATTHEWS to recover both punitive and

24   compensatory damages to deter future misconduct by the example of Defendants'

25   punishment.

26   102.   Finally, based upon the conduct of Defendants ROMERO and DOES 1-

27   10, inclusive, and each of them, violating the Bane Act, Plaintiff is entitled to a

28

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

1  multiplier of damages, civil penalties of $25,000 and the reasonable value of attorneys'

2  fees and costs, as authorized under Cal. Civ. Code § 52.

3  **PRAYER FOR RELIEF**

4  **WHEREFORE**, Plaintiff requests entry of judgment in his favor and against

5  Defendants as follows:

6  A.  For compensatory and special damages including but not limited to

7  Plaintiff's physical, mental, and emotional pain and suffering, physical

8  injuries, any hindered physical ability or earning potential; as well as all past,

9  present, and future related medical expenses, in an amount according to

10  proof at trial;

11  B.  For punitive damages against the individual defendants in an amount to be

12  proven at trial;

13  C.  For the reasonable attorneys' fees and costs allowed under 42 U.S.C. § 1988,

14  in an amount to be proven at trial;

15  D.  For interest;

16  E.  For all other damages allowed under federal law; and

17  F.  For such further relief as the Court may deem proper and just.

18

19  **Dated: February 22, 2024**                **ARIAS SANGUINETTI WANG**
                                               **& TEAM LLP**

20

21  By: _____
                                               MIKE ARIAS, ESQ.

22                                             ALEX BALLARD, ESQ.

23

24  **Dated: February 22, 2024**                **GASTÉLUM LAW, APC**

25

26  By: _____
                                               DENISSE GASTÉLUM, ESQ.

27

28                                             Attorneys for Plaintiff,
                                               **ELI MATTHEWS**

1

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims for relief alleged herein.

Dated: February 22, 2024

ARIAS SANGUINETTI WANG
    & TEAM LLP

By: _____
MIKE ARIAS, ESQ.
ALEX BALLARD, ESQ.

Dated: February 22, 2024

GASTÉLUM LAW, APC

By: _____
DENISSE GASTÉLUM, ESQ.

Attorneys for Plaintiff,
**ELI MATTHEWS**

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL